**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **DAVID NEAL,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:15-cv-1382-WTL-MJD |
| ) | |
| **INDIANA DEPARTMENT OF** ) | |
| **CORRECTION, et al.,** ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on the parties' cross-motions for summary judgment. The motions are fully briefed, and the Court, being duly advised, **DENIES** the Plaintiff's motion (Dkt. No. 52) and the Defendants' motion (Dkt. No. 60) for the reasons set forth below.

**I.   STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). When the Court reviews cross-motions for summary judgment, as is the case here, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quotation omitted). "'[W]e look to the burden of proof that each

party would bear on an issue of trial.'" *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.  BACKGROUND

David Neal has filed an action seeking an injunction enjoining the Defendants from violating the Rehabilitation Act, 29 U.S.C. § 701, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. Specifically, he has requested that the Indiana Department of Corrections ("IDOC") provide him with a wheelchair so that he can participate in rehabilitative and vocational activities offered at Miami Correctional Facility, an Indiana state prison managed by IDOC. Neal alleges that he is unable to walk more than a few hundred feet without experiencing pain and discomfort. He alleges that he would like to participate in vocational, educational, and rehabilitative programs offered by IDOC. Specifically, Neal wants to participate in the Purposeful Living Units Serve ("PLUS") program, which is located in the "H" dormitory at Miami Correctional Facility. Neal alleges that to be able to participate in the PLUS program he needs a wheelchair because he is unable to walk the increased distance between the "H" dorm and the mess hall and medical facility.[1]

---

[1] The Defendants' comparison of Neal's claims to those of the Plaintiff in *Sistrunk v. Khan*, 931 F. Supp. 2d 849 (N.D. Ill. 2013) is inapposite. In *Sistrunk*, the Plaintiff brought a Section 1983 action alleging deliberate indifference to his medical needs. While the court

2

### III.     DISCUSSION

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The term "program or activity" includes the operations of state agencies. *Id.* § 794(b). The Seventh Circuit has noted "that the standards applicable to one act are applicable to the other. Title II of the ADA was modeled after § 504 of the Rehabilitation Act; the elements of claims under the two provisions are nearly identical, and precedent under one statute typically applies to the other." *Washington v. Ind. High Sch. Athletic Ass'n, Inc*., 181 F.3d 840, 845 n.6 (7th Cir. 1999). Further, "the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros v. Ill. Dep't of Corr*., 684 F.3d 667, 671 (7th Cir. 2012) (citations omitted).

A violation of Title II of the ADA may be demonstrated in one of three ways: (1) by demonstrating that the defendant intentionally discriminated against the plaintiff based on his or

---

mentioned the ADA and Rehabilitation Act, the crux of the Plaintiff's claim alleged deliberate indifference in violation of the Fourteenth Amendment. By contrast, here Neal seeks injunctive relief solely based on claims under the ADA and Rehabilitation Act. While both cases involved the need for a wheelchair, the legal claims and the applicable standards are distinct.

her disability; (2) by demonstrating that the defendant has enacted a rule or policy that disproportionately impacts persons with disabilities; or (3) by demonstrating that the defendant has failed to reasonably accommodate the plaintiff. *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006) (citation omitted). In order for Neal to establish a violation of the Rehabilitation Act, and a concomitant violation of the ADA, he must demonstrate that (1) he is qualified to participate in the programs and activities sought; (2) he has a disability within the meaning of the statutes; and (3) he is being denied the benefits of services, programs or activities offered generally to the inmate population because of his disability, which equates to the DOC refusing to make a reasonable accommodation. *Jaros*, 684 F.3d at 672.

For the purposes of summary judgment, the parties agree that the first two requirements are met: Neal has a disability, he is an otherwise qualified individual who wants to participate in the PLUS and PEN Products programs, and he meets the minimum requirements necessary for those programs. The parties also agree that, should he be accepted into the PLUS program or the PEN Products program, Neal would be required to live in dormitories that would increase the distance he would have to walk to get his meals and medications. However, the parties dispute the critical issue in the case: whether the cane that the DOC has provided to Neal is a reasonable accommodation.

Whether an accommodation is "reasonable" requires a balancing of all the relevant facts, including (1) the size, facilities, and resources of the defendant, (2) the nature and cost of an accommodation, (3) the extent to which the accommodation is effective in overcoming the effects of the disability, and (4) whether the accommodation would require a fundamental alteration in the nature of the defendant's program. *See, e.g.,* 45 C.F.R. § 84.12(c)(1-3); *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 288 n.17 (1987). As such, the reasonableness of

4

an accommodation is generally a question of fact inappropriate for resolution on summary judgment. *See, e.g., Buskirk v. Apollo Metals,* 307 F.3d 160, 170-71 (3d Cir. 2002) ("Generally, the question of whether a proposed accommodation is reasonable is a question of fact."); *cf. Oconomowoc Residential Programs v. City of Milwaukee,* 300 F.3d 775, 784 (7th Cir. 2002) ("Whether a requested accommodation [under the Fair Housing Amendments Act] is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties.").

Neal has presented the following evidence that, if viewed in the light most favorable to him, demonstrates that a cane is not a reasonable accommodation.[2] Neal will experience a significant increase in pain and risk further injury if he is forced to walk the distances that would be required to access the PEN or PLUS program. Neal sustained serious injuries in 1999 after being run over by a Suburban SUV. Since that time, he has suffered from osteoarthritis in his knees and ankles. In 2014, he was diagnosed with degenerative disc disease. Due to these chronic conditions, Neal suffers from constant pain in his ankles, legs, knees, hips, back and neck. He has muscle weakness in his legs and back, nerve impingement that causes a pins and needles sensation in his feet, and reduced range of motion in his knees and ankles. Neal's left

---

[2] The Defendants cite to *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004), for the proposition that "[t]he facts that are supported by Neal's affidavit and by no other supporting evidence are to be given no weight by the Court on summary judgment." Dkt. No. 61 at 3. However, the court in *Butts* found that no additional documentary evidence was required in support of two "self-serving" affidavits. *Id.* The two Seventh Circuit cases cited in *Butts* held that the "court may consider self-serving statements in affidavits if they are based on personal knowledge and set forth specific facts." *Id.* (citing *Buire v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004); *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003)). Further, as the Seventh Circuit has noted, "deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." *Payne*, 337 F.3d at 771, and "the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (citations omitted).

ankle locks up when he stands or walks for too long. Walking causes Neal's symptoms to increase significantly, and he is unable to walk more than a few hundred feet at a time without experiencing significant pain and discomfort: his legs and ankles swell, and his pain level increases. The more Neal walks, the more fatigued his legs become, and they eventually give out. Due to his impairments, Neal has fallen and suffered injuries several times while incarcerated, and he faces a real threat of further injury if he attempts to walk the distances that would be required to access either the PEN or PLUS program.

The Defendants present the following evidence that, if viewed in the light most favorable to them, demonstrates that the cane they have provided Neal is a reasonable accommodation:

Kimberly Ann Myers, a nurse practitioner who has treated Neal, testified that she has observed Neal walking several times. "He had a mild limp on the right side. He was walking with his cane. He was not weight bearing with his cane. He was keeping stride with all of the other inmates at a fairly brisk pace." Dkt. No. 60-1 at 8.[3]

Dr. Paul Talbot, a doctor who has treated Neal at the Miami Correctional Facility, indicated that he "conducted a physical exam of Mr. Neal and determined that he had no joint deformity, heat, swelling, erythema or effusion and had full range of motion in both his right and left knees. At that time [June 24, 2015], Mr. Neal was ambulating with the assistance of a cane and a wheelchair was not medically necessary." (Dkt. No. 60-2 at 1-2.) He added, "Mr. Neal has done well without a wheelchair since he was weaned out of one after his total knee replacement

---

[3] The Defendants' brief asserts incorrectly that an x-ray can be used to determine pain. While the Defendants list as an undisputed fact that "[p]ain shows up on an x-ray as any vertebral height problems, arthritic changes, spurring or any other anomalies that may be congenital." (Dkt. No. 61 at 6), Myers' actual answer in response to the question, "How does pain show up on an x-ray?" was "If there was any vertebral heighth problems it will also show up any arthritic changes, any spurring. Any other anomalies that may even be congenital." (Dkt. No. 60-1 at 6).

surgery and exercise and ambulation are therapeutically good for him." (Dkt. No. 60-2 at 2.) "In my medical opinion, Mr. Neal does not need a wheelchair to ambulate from PEN products to the medical unit or from PEN products to the dining hall." (Dkt. No. 60-2 at 2.)

Dr. Noe Marandet, another physician at the Miami Correctional Facility who has provided care to Neal, indicated that "Mr. Neal is able to walk with limited to no assistance from a cane." (Dkt. No. 60-3 at 1.) He added, "In my medical opinion, Mr. Neal does not need a wheelchair to ambulate from PEN products to the medical unit in the Offender Services Building or from PEN products to the dining hall." (Dkt. No. 60-3 at 2.)

Given the conflicting evidence regarding Neal's physical condition and his ability to walk without pain and the risk of falling, this case cannot be resolved by summary judgment. A jury must determine whether the cane provided to Neal is a reasonable accommodation under the ADA and Rehabilitation Act. Accordingly, the motions for summary judgment are **DENIED**. This case remains set for trial on May 8, 2017. The parties are reminded of the Required Pre-Trial Preparation deadlines set forth in their case management plan.

**SO ORDERED: 11/7/16**

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.